IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUZIE ZUPAN and PAUL ZUPAN,

       Plaintiffs,

   v.

CALIFORNIA DEPT. OF CORPORATIONS,
PRESTON DEFAUCHARD, JOHN DREWS, MARC
VALLE, JAMES WALL, HOWARD GORE,
LEONARD RIFKIND, POSIE CONKLIN and
MARK MOSLEY,

       Defendants.

_____/

No. C 09-01014 CW

ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS AND
ADMINISTRATIVELY
CLOSING CASE

On March 9, 2009, Plaintiffs Suzie and Paul Zupan (husband and wife) filed this civil rights action which arises from two underlying state proceedings: (1) an investigation and disciplinary proceeding of the California Department of Corporations (CDOC) regarding allegations that Plaintiffs were improperly managing the Latitude Capital Management High Income Fund, LLC and the Latitude Capital Management Strategic Income Fund (together, LCM), investment funds licensed by CDOC and (2) Plaintiffs' action in state superior court against Defendants James Wall and Howard Gore stating ten counts of tortious conduct. Defendants, in four separate motions, seek dismissal of Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendant Wall also moves to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Plaintiffs have filed an opposition to all of

the motions.  The motions were heard on August 27, 2009.  Having considered all of the papers filed by the parties and oral argument on the motions, the Court grants Defendants' motions to dismiss.

BACKGROUND

The allegations in Plaintiffs' complaint are as follows. Plaintiff Suzie Zupan is president of LCM and Plaintiff Paul Zupan is an employee of LCM.  Both hold certificates as Investment Advisor Representatives from the CDOC.  Defendant CDOC is a state regulatory body that licenses and disciplines Registered Investment Advisors and Representatives.[1]  Defendant Preston DeFauchard, sued in his official capacity, is the Commissioner of CDOC.  Defendant John Drews, sued in his personal and official capacities, is an employee of CDOC.[2]  Defendant Marc Valle, sued in his personal and official capacities, is an employee of CDOC.[3]  These Defendants will be referred to collectively as state Defendants or CDOC Defendants.  Defendants James Wall and Howard Gore are being sued in their personal and official capacities.[4]  Defendant Leonard Rifkind is an attorney who represented Wall and Gore in the state court action and is being sued in his personal and official capacities.  Defendant Posie Conklin was appointed as a temporary receiver for a company previously managed by LCM and is being sued in her personal and official capacities.  Defendant Mark Mosley is

---

[1]In their opposition, Plaintiffs concede that CDOC is not a proper defendant in this action.  Therefore, all claims against CDOC are dismissed for this reason.

[2]Defendants identify Drews as CDOC's Corporate Counsel.

[3]Defendants identify Valle as an examiner for CDOC.

[4]Defendants identify Wall and Gore as investors in companies managed by Plaintiffs.

2

an attorney who represented Conklin and is being sued in his personal capacity. These Defendants will be referred to collectively as non-state Defendants.[5]

In early 2008, Plaintiffs filed a state civil action against Defendants Wall and Gore. Comp. at ¶ 18. Wall, Gore and their attorney Rifkind responded by initiating allegedly "false complaints to the DOC, the California Department of Real Estate, the California State Attorney General, the Marin and Sonoma County District Attorney's office, the Federal Bureau of Investigation and the Central Intelligence Agency." Subsequently, Conklin and Mosley joined "in the effort and did make such false claims and improperly communicate with Defendants Drews and Valle and did file false statements with several local police agencies." Comp. at ¶ 19. Beginning in early 2008 and continuing to the present, CDOC, Drews and Valle initiated, conducted and directly oversaw a disciplinary process and an investigation into allegations made by Wall, Gore, Rifkind, Conklin and Mosley that Plaintiffs were fraudulently taking money belonging to the LCM High Income Fund, improperly and illegally managing that company and improperly and illegally claiming management control of it. Comp. at ¶ 20. During CDOC's investigation and disciplinary process, no evidence of such improper and illegal activity was found. However, CDOC, Drews and

---

[5]Defendant Gore does not move to dismiss. A district court may, on it own motion, dismiss an action as to a defendant who has not moved to dismiss where that defendant is in a position similar to that of the moving defendants or where claims against such defendants are integrally related. Silverton v. Dep't of Treasury of the United States, 644 F. 2d 1341, 1345 (9th Cir. 1981). As discussed below, the claims against the non-state Defendants are dismissed. Because Gore is in a position similar to the non-state Defendants, the claims against him also are dismissed.

United States District Court

For the Northern District of California

Valle constructed claims and allegations in order to support a disciplinary action and wrongfully prosecuted that disciplinary action to appease the complaining non-state Defendants. Comp. at ¶ 21.

Wall and Gore filed many false and misleading complaints with CDOC against Plaintiffs which included allegations of fraud and theft when Wall and Gore had no credible foundation for making such complaints. Comp. at ¶ 26. Rifkind, Conklin and Mosley also filed false and misleading complaints against Plaintiffs and their companies and had many improper communications with CDOC Defendants concerning CDOC's disciplinary actions against Plaintiffs. Such communications included allegations of fraud and theft when these Defendants had no credible foundation for making such statements. Comp. at ¶ 27. Drews and Valle worked with the non-state Defendants wrongfully to discipline Plaintiffs based, not on the complaints filed by the non-state Defendants, but on allegations constructed to support disciplinary action to appease the non-state Defendants. Comp. at ¶ 28. The foregoing improper complaints and communications with CDOC Defendants were taken to defend against Plaintiffs' lawsuit against Wall and Gore. Comp. at ¶ 29.

All non-state Defendants had knowledge of the misrepresentations being made to CDOC and its employees, thus creating "conflicts of interest." Comp. at ¶¶ 31-47. Non-state Defendants delivered confidential records and information concerning Plaintiffs to each other and to CDOC and its employees. Drews and Valle repeated unproven allegations about Plaintiffs to non-state Defendants. Comp. at ¶¶ 48-52. Drews and Valle unlawfully prosecuted a disciplinary action against Plaintiffs for

the purpose of improperly assisting Wall and Gore.  Comp. at ¶ 53.
Conklin and Mosley have retaliated against Plaintiffs by pursuing
the prosecution of the disciplinary action by CDOC against
Plaintiffs.  Comp. at ¶ 54.

Based on these allegations, Plaintiffs attempt to state four
causes of action under 42 U.S.C. § 1983 against all Defendants:
(1) violation of Plaintiffs' due process and equal protection
rights under the Fourteenth Amendment by abusing the complaint and
disciplinary process; (2) violation of Plaintiffs' due process
rights under the Fourteenth Amendment by impairing Plaintiffs'
reputation, property interests in licensing and economic well-being
and by causing CDOC to mishandle the investigation, prosecution and
discipline of Plaintiffs due to "conflicts of interest;"
(3) violation of Plaintiffs' equal protection rights under the
Fourteenth Amendment by breaching their privacy and impairing their
liberty interests in reputation, property interests in licensing
and economic well-being; and (4) violation of Plaintiffs' due
process rights under the Fourteenth Amendment and free speech
rights under the First Amendment through the unlawful prosecution
of a disciplinary action and retaliation against Plaintiffs.
Plaintiffs seek declaratory and injunctive relief, compensatory
damages in the amount of $1 million and punitive damages in the
amount of $1 million.

JUDICIAL NOTICE

CDOC Defendants request judicial notice of the May 9, 2008
Accusation Package that Drews mailed to Plaintiffs, the December
12, 2008 CDOC Decision, <u>Matter of Paul Zupan; Suzie Zupan; Latitude
Capital Management, Inc.; LCM High Income Fund, LLC; and LCM</u>

Strategic Income Fund, LLC, OAH No. 2008050496; and the March 2, 2009 petition for writ of mandamus Plaintiffs filed in state superior court, Zupan v. California Department of Corporations, Preston Dufauchard, Commissioner, No. Civ. 09-0939.  Plaintiffs do not oppose this request.

The Court takes judicial notice of these documents as matters of public record, capable of accurate and ready determination. Plaintiffs refer to these documents in their complaint and do not question their authenticity.

The following facts are disclosed in these documents.  On May 9, 2008, CDOC initiated actions against Plaintiffs by filing and serving them with an Accusation and Statement in Support, which set out the allegations in support of revoking Plaintiffs' licenses and barring them from practice.  The core allegations are Plaintiffs' failure to disclose to investors or to CDOC Paul Zupan's background as a convicted felon and disbarred attorney and falsely listing his position with the investment companies as clerk when his true role was that of chief operating officer and manager.  On July 1 and 2, 2008, at Plaintiffs' request, a hearing on the charges was held before an administrative law judge (ALJ).  Drews filed the Accusation and prosecuted the case before the ALJ and Valle gave evidence at the hearing.  On September 2, 2008, a twenty-seven page proposed decision was issued by the ALJ and, on December 12, 2008, the decision was adopted by CDOC in its entirety.  In the decision, the ALJ carefully documented Plaintiffs' actions, cited law that these actions violated, revoked the business licenses for the High Income Fund and the Strategic Income Fund, revoked Plaintiffs' individual certifications and barred them from holding any position

1   of employment, management or control of any finance lender, broker,

2   investment adviser, broker-dealer or commodity adviser.  On March

3   2, 2009, Plaintiffs filed in the state superior court a petition

4   for a writ of mandamus setting aside the December 12, 2008 CDOC

5   decision.  In their petition, Plaintiffs alleged that the CDOC "did

6   not [accuse Plaintiffs] of wrongdoing until pressured by a few

7   investors in early 2008; the majority of the Respondents' [CDOC and

8   Commissioner DeFauchard] witnesses at the hearing had an ulterior

9   motive in testifying at such hearing; such witnesses had no

10  foundation for [their] statements; and such witnesses were coached

11  by Respondents' representatives."

12                              LEGAL STANDARD

13  I. Failure to State a Claim Under Rule 12(b)(6)

14       A complaint must contain a "short and plain statement of the

15  claim showing that the pleader is entitled to relief."  Fed. R.

16  Civ. P. 8(a).  When considering a motion to dismiss under Rule

17  12(b)(6) for failure to state a claim, dismissal is appropriate

18  only when the complaint does not give the defendant fair notice of

19  a legally cognizable claim and the grounds on which it rests.  Bell

20  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Fed. R.

21  Civ. P. 8(a)(2)).

22       In considering whether the complaint is sufficient to state a

23  claim, the court will take all material allegations as true and

24  construe them in the light most favorable to the plaintiff.  NL

25  Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

26  However, this principle is inapplicable to legal conclusions;

27  "threadbare recitals of the elements of a cause of action,

28  supported by mere conclusory statements," are not taken as true.

7

<u>Ashkcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

The analysis under Rule 12(b)(6) is two-pronged. First, the court identifies allegations that, because they are merely conclusions, are not entitled to the presumption of truth. <u>Id.</u> at 1950. Second, the court determines whether any  factual allegations, when taken as true, plausibly give rise to an entitlement to relief. <u>Id</u>

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. <u>Id.</u> at 296-97.

II. Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). Federal subject matter jurisdiction must exist at the time the action is commenced. <u>Morongo Band of Mission Indians v. Cal. State Bd. of Equalization</u>, 858 F.2d 1376, 1380 (9th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1006 (1989). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to

establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. <u>Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979); <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987).

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Therefore, a Rule 12(b)(1) challenge should be decided before other grounds for dismissal, because they will become moot if dismissal is granted. <u>Alvares v. Erickson</u>, 514 F.2d 156, 160 (9th Cir.), <u>cert. denied</u>, 423 U.S. 874 (1975).

A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. <u>Stock West, Inc. v. Confederated Tribes</u>, 873 F.2d 1221, 1225 (9th Cir. 1989). An action should not be dismissed for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is clear that the jurisdictional deficiency cannot be cured by amendment. <u>May Dep't Store v. Graphic Process Co.</u>, 637 F.2d 1211, 1216 (9th Cir. 1980).

DISCUSSION

Defendants offer several arguments for dismissal: Plaintiffs' conclusory allegations do not state cognizable § 1983 claims; Eleventh Amendment immunity bars claims against state Defendants sued in their official capacities; absolute prosecutorial immunity bars claims against Commissioner DeFauchard and Corporate Counsel Drews; the <u>Rooker-Feldman</u> doctrine bars the Court from reviewing CDOC's decision; and the Court should abstain under <u>Younger v. Harris</u>, 401 U.S. 37 (1971). Non-state Defendants add the following

arguments for dismissal: they have not acted under color of state law as is required for claims under § 1983; they have not deprived Plaintiffs of a constitutional right; and they are entitled to immunity under the Noerr-Pennington doctrine.

I. Rooker-Feldman Doctrine

Defendants argue that the Rooker-Feldman doctrine bars Plaintiffs' claims because they attack the CDOC decision. Plaintiffs respond that their complaint addresses violations of their civil rights and has nothing to do with the CDOC decision.

United States District Courts generally do not have jurisdiction over challenges to state court decisions, even if those challenges raise federal constitutional issues. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 482-83 (1983). "If [the state] court erroneously determines a federal question, recourse does not lie to the United States District Court or to the United States Court of Appeals. Jurisdiction to review the judgments of state courts lies exclusively in the United States Supreme Court." Exxon Shipping Co. v. Airport Depot Diner, Inc., 120 F.3d 166, 169 (9th Cir. 1997). However, the Rooker-Feldman doctrine does not apply to decisions of state administrative agencies. Verizon Maryland, Inc. v. Public Serv. Comm'n, 535 U.S. 635, 644 n.3 (2002); Southern Cal. Edison Co. v. Lynch, 307 F.3d 794, 805 (9th Cir. 2002).

Because the CDOC is a state agency, the Rooker-Feldman doctrine does not apply to its decision. Defendants' cases are inapplicable because they address judgments of state courts, not state agencies. See, e.g., Mothershed v. Justices of the Supreme

United States District Court

For the Northern District of California

Court, 410 F.3d 602, 606 (9th Cir. 2005) (under <u>Rooker-Feldman</u>,

district court lacked jurisdiction over challenges to judgments of

state courts upholding state bar disciplinary orders); <u>Atlantic</u>

<u>Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers</u>, 398

U.S. 281, 296 (1970) (<u>Rooker-Feldman</u> applied to state court

injunction).  For this reason, Defendants' argument that

Plaintiffs' claims are barred by the <u>Rooker-Feldman</u> doctrine fails.

The <u>Rooker-Feldman</u> doctrine may apply once the state court issues

its decision in the mandamus action.

II. <u>Younger</u> Abstention

Defendants argue that, under <u>Younger</u>, the Court should abstain

from adjudicating this case because there is an ongoing state

judicial proceeding that implicates an important state interest and

that provides a full and fair opportunity for Plaintiffs to

litigate their claims.  Plaintiffs respond that <u>Younger</u> does not

apply because their state petition for writ of mandamus requests

review of the CDOC administrative decision, whereas this action

arises from Defendants' violations of Plaintiffs' civil rights.

As the Ninth Circuit has explained, "<u>Younger</u> is an exception

to the usual rule that federal courts should exercise the

jurisdiction conferred on them by statute." <u>Gartrell Constr. Inc.</u>

<u>v. Aubry</u>, 940 F.2d 437, 441 (9th Cir. 1991).  In <u>Younger</u>, the

Supreme Court held that a federal court should not enjoin a pending

state criminal proceeding except in the very unusual situation that

an injunction is necessary to prevent great and immediate

irreparable injury.  The <u>Younger</u> doctrine has been extended to

require abstention from adjudicating federal lawsuits, including

those for damages under 42 U.S.C. § 1983, that would interfere with

11

state civil cases and administrative proceedings.  <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 627 (1986);  <u>Middlesex County Ethics Committee v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982); <u>Gilbertson v. Albright</u>, 381 F.3d 965, 968 (9th Cir. 2004) (en banc).

Under <u>Younger</u>, a federal court should abstain if "(1) a state initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that <u>Younger</u> disapproves."  <u>San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose</u>, 546 F.3d 1087, 1092 (9th Cir. 2008).

To determine whether there is a pending state judicial proceeding within the meaning of <u>Younger</u>, the critical question is "whether the state proceedings were underway before the initiation of the federal proceedings." <u>Weiner v. County of San Diego</u>, 23 F.3d 263, 266 (9th Cir. 1994).  Here, the state petition for mandamus was pending when this action was filed.  Plaintiffs assert that the complaint filed in this Court is independent of the pending state proceeding.  It is not.  Both the state and federal actions concern CDOC's investigation of Plaintiffs and their investment businesses, CDOC's decision to revoke Plaintiffs' individual certifications and business licenses and the procedural details of the CDOC's action.  The state and federal proceedings are concurrent and intertwined and thus the first <u>Younger</u>

requirement is satisfied.

The second requirement under <u>Younger</u>, that the state proceeding "implicates important state interests," <u>Gilbertson</u>, 381 F.3d at 978, is also satisfied. "The importance of the interest is measured by considering its significance broadly, rather than by focusing on the state's interest in the resolution of an individual's case." <u>Baffert v. Cal. Horse Racing Bd.</u>, 332 F.3d 613, 618 (9th Cir. 2003). The state of California has an important interest in the enforcement of its securities laws and in the protection of its citizens from individuals who violate those laws. It is clear that the state proceeding implicates an important state interest.

Third, in order for <u>Younger</u> abstention to apply, Plaintiffs must have an opportunity to litigate their federal constitutional challenges in the state proceeding. <u>Gilbertson</u>, 381 F.3d at 978. Plaintiffs bear the burden of showing that they are barred from raising their federal claims in the state court action. <u>Lebbos v. Judges of Superior Court</u>, 883 F.2d 810, 815 (9th Cir. 1989). Plaintiffs do not address this issue. Citing <u>Dowden v. City of Sacramento</u>, 40 F. Supp. 2d 1146, 1149, n.1 (E.D. Cal. 1999), Defendants argue that Plaintiffs could bring their civil rights claims in the petition for writ of mandamus.

In <u>Dowden</u>, the court addressed whether the plaintiff had an adequate opportunity to litigate a First Amendment claim in a proceeding before the state Civil Service Board in which he was challenging disciplinary action taken against him by the police department. The court explained that the opportunity to raise constitutional claims in state judicial proceedings reviewing an

administrative decision is sufficient to support <u>Younger</u>
abstention. <u>Id.</u> ("Because the state court is 'required to exercise
its independent judgment' in reviewing a civil service board's
disciplinary ruling, Dowden may be able to assert his First
Amendment defense in any judicial appeal even were he unable to
assert it before the Board.") (citations omitted); <u>see also</u>, <u>Mobil
Oil Corp. v. Superior Court</u>, 59 Cal. App. 3d 293, 307 (1976) ("A
challenge of the constitutionality of the act as it is applied to
an individual under the facts of a particular case by an
administrative board is essentially a review of the validity of the
administrative action and as such is properly brought under the
provisions of § 1094.5 . . . .")[6]

Similarly, Plaintiffs have the opportunity to litigate their
constitutional claims in the state court proceeding.  Therefore,
this requirement of the <u>Younger</u> doctrine is satisfied.

The final <u>Younger</u> requirement is also satisfied because the
federal suit would "enjoin or have the practical effect of
enjoining the [state] proceeding." <u>San Jose Silicon Valley Chamber
of Commerce</u>, 546 F.3d at 1095.  The relief Plaintiffs seek in
federal court would, in effect, invalidate the CDOC decision and
preempt the state appellate court proceeding.  The relief sought,
therefore, would "enjoin . . . or otherwise involve the federal
court in terminating or truncating" the administrative proceeding.
<u>Id.</u> at 1096.  Thus, the four <u>Younger</u> requirements have been
satisfied.

---

[6]California Code of Civil Procedure § 1094.5 provides for
judicial review by petition for writ of mandamus of administrative
orders or decisions.

1    Citing <u>Gilbertson</u>, Plaintiffs argue that, even if <u>Younger</u>

2   applies, their claims for damages should be stayed rather than

3   dismissed.  Defendants do not reply to this argument.  In

4   <u>Gilbertson</u>, the court held that, although a federal court should

5   refrain from exercising jurisdiction in actions for declaratory and

6   injunctive relief when <u>Younger</u> applies, "an abstention-based stay

7   order, rather than a dismissal, is appropriate when damages are at

8   issue."  <u>Gilbertson</u>, 381 F.3d at 975.  Therefore, under <u>Younger</u>,

9   the Court dismisses Plaintiffs' claims for injunctive and

10  declaratory relief, but stays the claims for damages.

11  III. Sovereign, Prosecutorial and Qualified Immunity

12       A. Sovereign Immunity

13       The state Defendants argue that they are protected by Eleventh

14  Amendment sovereign immunity from Plaintiffs' damages claims

15  against them in their official capacity.  Plaintiffs concede that

16  sovereign immunity bars them from suing state employees, in their

17  official capacity, for damages, but correctly argue that, under <u>Ex</u>

18  <u>parte Young</u>, 209 U.S. 123 (1908), they may sue state officials for

19  prospective injunctive relief.  However, this argument fails

20  because, as discussed above, under <u>Younger</u>, the Court abstains from

21  taking jurisdiction over Plaintiffs' claims for injunctive and

22  declaratory relief.  Plaintiffs correctly argue that the Eleventh

23  Amendment does not bar claims for damages against Drews and Valle,

24  in their personal capacities.

25       B. Prosecutorial Immunity

26       State Defendants Drews and Valle argue that they are entitled

27  to absolute prosecutorial immunity for their actions in bringing

28  the revocation proceedings against Plaintiffs.  Plaintiffs respond

15

that they not are suing Drews and Valle for their prosecutorial activities but for improperly colluding with investors, meeting with investors and assisting in the investors' litigation against Plaintiffs.

Absolute prosecutorial immunity applies only where alleged conduct is "intimately associated with the judicial phase." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Investigatory or administrative functions warrant only qualified immunity. Van de Kamp v. Goldstein, __ U.S. __, 129 S. Ct. 855, 861 (2009); Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). "An official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Genzler v. Longanbach, 410 F.3d 630, 636 (9th Cir. 2005) (quoting Burns v. Reed, 500 U.S. 478, 486 (1991)). The presumption is that qualified, rather than absolute, immunity is sufficient to protect government employees in the performance of their official duties. Milstein v. Cooley, 257 F.3d 1004, 1008 (9th Cir. 2001) (citing Burns, 500 U.S. at 486-87). In considering immunity, the court examines the nature of the function performed, not the identity of the actor who performed it. Kalina v. Fletcher, 522 U.S. 118, 127 (1997).

Plaintiff's allegations specifying Drews and Valle's improper conduct are sparse. However, some of the acts of which Plaintiffs complain were allegedly done by Drews and Valle outside the scope of their prosecutorial function. Therefore, absolute immunity does not apply to those acts at this stage of the proceedings where Plaintiffs' factual allegations must be taken as true.

C. Qualified Immunity

In the alternative, Drews and Valle argue that they are

protected from liability by qualified immunity.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  On the other hand, if a violation could be made out on the allegations, the next step is to ask whether the constitutional right in issue was clearly established.  <u>Id.</u>

As discussed below, Plaintiffs' general allegations that Defendants' actions violated Plaintiffs' civil and due process rights fail to include the required elements of any constitutional claim.  Absent a constitutional violation, Drews and Valle have no liability nor any need for qualified immunity.  As discussed below, Plaintiffs may move to amend their complaint after the completion of the state mandamus proceedings.  If Plaintiffs are allowed to amend their complaint, Drews and Valle may again move to dismiss based on qualified immunity.

III. <u>Noerr-Pennington</u> Immunity

The non-state Defendants argue that they are shielded from liability by the <u>Noerr-Pennington</u> doctrine, which provides that a defendant is immune from liability from claims based on its exercise of its First Amendment right to petition the government for redress of grievances.  <u>United Mine Workers of America v. Pennington</u>, 381 U.S. 657, 669 (1965); <u>Eastern Railroad Presidents</u>

17

Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).  Plaintiffs respond that Defendants are not shielded due to the misrepresentation exception to Noerr-Pennington, which provides that immunity can be lost if the efforts to petition the government "are a mere sham, undertaken solely to interfere with free competition and without the legitimate expectation that such efforts will in fact induce lawful government action."  Omni Res. Dev. Corp. v. Conoco, Inc., 739 F.2d 1412, 1413 (9th Cir. 1984).

The scope of the exception varies according to the governmental entity the defendant is petitioning.  Kottle v. Northwest Kidney Ctrs., 146 F.3d 1056, 1060 (9th Cir. 1998).  When the governmental entity is a court of law, there are three circumstances warranting exception.  Id.  Plaintiffs rely on the third: If the defendant makes intentional misrepresentations to the court, the litigation is a sham if the defendant's intentional misrepresentations deprived the litigation of its legitimacy.  Id. Matters before an administrative agency are treated like judicial proceedings to the extent the agency's actions "are guided by enforceable standards subject to review."  Id. at 1062-63.

Plaintiffs argue that non-state Defendants' complaints to CDOC--that Plaintiffs were illegally taking money belonging to the LCM High Income Fund and improperly and illegally managing and controlling the company--were false and misleading.  Plaintiffs claim that, on this motion to dismiss, these allegations must be taken as true.

Defendants point out that Plaintiffs' allegations do not meet Kottle's requirement that the misrepresentations made to the agency

18

United States District Court

For the Northern District of California

must be such that would deprive the agency's action of its legitimacy.  Plaintiffs allege that CDOC investigated the purportedly false complaints that Defendants made and found no evidence to support them, but brought a disciplinary action against Plaintiffs based on "other wrongful allegations."  Thus, non-state Defendants argue, their allegedly false complaints did not deprive CDOC's disciplinary action of its legitimacy because CDOC did not rely on those statements to discipline Plaintiffs.  This argument is well-taken.

Non-state Defendants are entitled to <u>Noerr-Pennington</u> immunity from Plaintiffs' four claims for relief against them, all of which are based on their complaints to CDOC.

IV. Sufficiency of Allegations to State a Claim

As stated above, in <u>Iqbal</u>, the Supreme Court explained that "the tenet that a court must accept as true all factual allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949.  The Court suggested that, in considering a motion to dismiss, the district court should first identify pleadings that are merely conclusions, which are not entitled to the presumption of truth.  <u>Id.</u> at 1950.  Next, the district court should determine whether the non-conclusory allegations state a plausible claim for relief.  <u>Id.</u>  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u> at 1949.  A claim has facial plausibility when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>

United States District Court

For the Northern District of California

Most of Plaintiffs' allegations are conclusory and, therefore, are not taken as true. The remaining factual allegations are insufficient to state plausible claims for relief.

The following are the elements of the constitutional claims that Plaintiffs purport to allege under 42 U.S.C. § 1983. Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." <u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. <u>Graham v. Connor</u>, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Ketchum v. Alameda County</u>, 811 F.2d 1243, 1245 (9th Cir. 1987). Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988); <u>Harris v. City of Roseburg</u>, 664 F.2d 1121, 1125 (9th Cir. 1981). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. <u>Leer</u>, 844 F.2d at 633.

To state an equal protection claim under 42 U.S.C. § 1983, plaintiffs must allege that they are members of a protected class

20

**United States District Court**
For the Northern District of California

and that the defendants intentionally discriminated against them based upon membership in that protected class. <u>Serrano v. Francis</u>, 345 F.3d 1071, 1081-82 (9th Cir. 2003); <u>Monteiro v. Tempe Union High School Dist.</u>, 158 F.3d 1022, 1026 (9th Cir. 1998). The due process clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property" without due process of law. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570-71 (1972); <u>Mullins v. Oregon</u>, 57 F.3d 789, 795 (9th Cir. 1995). A procedural due process violation has two elements. First, plaintiffs must show that the government has deprived them of life, liberty or property. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332-33 (1976). Second, plaintiffs must show that the government deprived them of these constitutionally-protected interests without due process of law. <u>Id.</u> To state a First Amendment free speech claim, plaintiffs must plead that a government official sought to chill protected speech. <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989).

The gravamen of Plaintiffs' complaint is that non-state Defendants made misrepresentations about Plaintiffs to CDOC and, as a result, two CDOC employees subjected Plaintiffs to some form of malicious prosecution. Plaintiffs' first cause of action is a violation of due process and equal protection based on Defendants' "abuse of the disciplinary process." Their second cause of action is a due process violation based upon unspecified "conflicts of interest" between Defendants. The third cause of action is an equal protection claim based on breach of privacy and the final cause of action is for violations of Plaintiffs' due process and free speech rights.

1   Plaintiffs' causes of action fail to state a claim for many

2   reasons.  Their equal protection claims fail because they do not

3   allege membership in a protected class and intentional

4   discrimination by Defendants based upon membership in that

5   protected class.  In regard to the due process claims, assuming

6   that Plaintiffs have alleged a property interest in their business

7   licenses, they have failed to allege what process was due to them

8   that they did not receive.  In regard to their free speech claim,

9   Plaintiffs have failed to allege any protected speech that was

10  chilled and any action on the part of Defendants that might have

11  chilled it.  The non-state Defendants also correctly point out that

12  their actions were not taken under color of state law.

13  For all these reasons, Plaintiffs' allegations fail to state

14  claims.

15  In summary, under the <u>Younger</u> doctrine, the Court abstains

16  from taking jurisdiction over Plaintiffs' claims for injunctive

17  relief and stays hearing the claims for damages against Drews and

18  Valle.  Under the <u>Noerr-Pennington</u> doctrine, non-state Defendants

19  are immune from liability.  Because the only remaining claims are

20  stayed, this case will be administratively closed.  Within thirty

21  days after the state court issues its judgment in the mandamus

22  action, Plaintiffs may file a motion to reopen the case, lift the

23  stay and amend their complaint.  If Plaintiffs are permitted to

24  file an amended complaint, they may only add allegations remedying

25  the deficiencies in their remaining claims against Drews and Valle.

26                              CONCLUSION

27  For all the foregoing reasons, the Court grants Defendants'

28  motions to dismiss with prejudice all the claims in Plaintiffs'

                                  22

complaint, with the exception of the claims for damages against Drews and Valle, which are dismissed with leave to amend once the Younger stay is lifted. (Docket ## 10, 13, 19 and 21). The clerk shall administratively close this case.

IT IS SO ORDERED.

Dated: February 8, 2010

CLAUDIA WILKEN
United States District Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SUZIE ZUPAN et al,

               Plaintiff,

  v.

CALIFORNIA DEPT OF CORPORATIONS et al,

               Defendant.

_____/

Case Number: CV09-01014 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 8, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

James Wall
530 Alameda Del Prado
#194
Novato, CA 94949

Paul Zupan
P.O. Box 1028
Sausalito, CA 94966

Suzie Zupan
P.O. Box 1028
Sausalito, CA 94966

Dated: February 8, 2010

                             Richard W. Wieking, Clerk
                             By: Ronnie Hersler, Deputy Clerk